MARY E. OHLENKAMP, Respondent, v. UNION PACIFIC RAILROAD COMPANY, a Corporation, Appellant.

### No. 1324.  (67 Pac. 411.)

1. **Master and Servant: Railways: Liability of Master: Instructions.**

After a railway engineer failed to receive a signal to stop, the conductor applied the air brakes, and plaintiff's decedent, a brakeman, who was standing on top of a car, pitched forward and was killed. The evidence was conflicting as to whether the use of an air brake was justifiable unless in case of emergency, and also as to whether the conductor applied the brake suddenly with full force or gradually. The court instructed that an employee assumes the ordinary risks incident to his employment, but his employer has no right to so increase those risks, without warning as to make the employment more dangerous than the employee would "naturally" expect; and if the employer does so, and by reason thereof, through no fault of his own, the employee is injured, the employer is liable. *Held*, that the instruction was erroneous, as seeming to assume that the employer increased the ordinary risks without warning the employee.

2. **Same.**

The instruction is also erroneous in the use of the word "naturally" for the word "reasonably."

3. **Same.**

The court also instructed that the risks assumed by an employee are such as are necessarily incident to his employment, and do not include "unnecessary" use by the employer of extraordinary instrumentalities which increase the risks ordinarily attendant.

*Held,* that instruction was erroneous, the word "unnecessary" leading the jury to conclude that the application of the brake in the manner stated was wrongful and unjustifiable.

**4. Same.**

In an action for the death of a railroad brakeman, alleged to have been caused by a jolt of the train occasioned by sudden application of the air brakes by the conductor, an instruction that if the accident "was proximately occasioned by the negligent act of the conductor (or by an act which was unnecessary, and which made the duties of the deceased more dangerous than they would ordinarily have been), and that he had no warning of such negligent or unnecessary act, the defendant company is liable, though you may further find that other causes may also have contributed to bring about the disastrous result," was erroneous.

**5. Evidence: Allegations: Variance.**

Where, in an action for the death of a railroad brakeman, alleged to have been caused by a jolt occasioned by a sudden application of the air brakes by the conductor, there was no allegation of defective couplings, or that the cars were derailed, evidence of such facts was not admissible.[1]

(Decided January 25, 1902.)

Appeal from the Second District Court, Weber County.— *Hon. H. H. Rolapp,* Judge.

Action to recover damages for the death of plaintiff's husband, alleged to have been caused by the negligence of the defendant in the operation of its railroad. From a judgment in favor of the plaintiff for $4,250, the defendant appealed.

REVERSED.

*LeGrande Young, Esq.,* and *A. W. Agee, Esq.,* for appellant.

---

[1] Peay v. Salt Lake City, 11 Utah 331, 338; 40 Pac. 206; Dan Hartog v. Tibbitts, 1 Utah 328.

The verdict being unsustained by the evidence and proof, it should have been set aside by the court and a new trial granted, and the court will notice the evidence, and, finding there is no proof to sustain the material allegations of the complaint, is bound to reverse the case on that ground.

See Thompson on Trials, section 2273, in which the author says:

"An appellate court will set aside a verdict where the evidence against it preponderates to such an extent as to create an unavoidable conclusion that the verdict was the result of passion or prejudice."

The plaintiff's own testimony and the testimony of defendant shows so plainly that whatever the conditions were about the stopping or moving of the freight train, plaintiff's intestate contributed to his own misfortune by not paying attention to the conditions surrounding him, and the court on this ground alone should reverse the court below. Grand Trunk Railway Co. v. Baird, 94 Fed. Rep. 946; Railway Co. v. Vollard, 27 Wallace 341; Railway Co. v. Jones, 95 U. S. 439; Clark v. O. S. L. R. R., 20 Utah 401.

The court erred in allowing the testimony of witness, over the objection of defendant, as follows:

"Q. Now, then, suppose there were five or six loaded cars behind the empty coal car and the engine ahead, and the air is put on from the rear end of the train with full force. Under these circumstances isn't it more than likely that the car would be thrown up—tipped up off the track?"

Objected to by counsel for defendant, for the reason that there is no evidence before the court that the air was put on full force from the rear end of the train. Another objection by counsel for defendant was that there is no evidence that the car was tipped up or thrown off the track. Objection and motion to strike out overruled.

This evidence was calculated to mislead the jury, as it is a variance from the allegations of the complaint of plaintiff.

There is not a single allegation, nor was there any testimony from any witness, that the car was thrown up. Not a single witness testified to the hypothetical proposition made by Judge Maginnis; on the contrary, when they asked Mrs. Mildon if the cars did not jump up, she said no, they did not; they bumped together as she had seen them do many times. Now, testimony of this kind would mislead the jury, and no doubt did mislead them, to the injury of defendant in this case.

It is scarcely necessary to cite authorities on a proposition so primary as this or to make an extended argument about the impropriety and illegality of plaintiff being allowed to introduce testimony on a question not mentioned in the complaint; we will, however, call to the court's notice the following: Peay v. Salt Lake City, 11 Utah 331; McCord v. Seal, 56 Cal. 262; Hecla Gold Mining Co. v. Gisborn, 21 Utah 68.

*W. L. Maginnis, Esq.,* for respondent.

### STATEMENT OF FACTS.

The plaintiff brought this action to recover damages for the death of her husband, alleged to have been caused through the negligence of the defendant in the operation of its railroad. The complaint charged that while the deceased, Henry F. Ohlenkamp, was on top of the defendant's moving freight train, in the performance of his duties as a brakeman, its conductor carelessly and negligently caused the train "to be brought to an unnecessarily sudden stop," while the same was "running at the rate of about ten miles an hour," without giving the deceased any warning of the sudden stoppage, and thereby caused him to fall from the top of the train, inflicting injuries which caused his death; and that the stoppage was effected "by means of what is known as the 'emergency air brake,' without sufficient or any cause for the use of such extra-

ordinary means." The answer denied negligence on the part of the defendant, and alleged as the cause of the injuries, negligence by the deceased, and also assumption of risks by him. The evidence, among other things, shows that the accident happened on the third of July, 1900, at or near the station of Uintah, Utah; that at the time the deceased was on top of one of defendant's freight trains, on the third car from the engine, attending to his duties as a brakeman; that the train consisted of thirty-three cars, drawn by one of the largest engines used on that road; that on approaching the station, and just before the accident, the train was running down grade at a speed of about eight miles an hour; that as the train was passing the station the conductor received notice to pick up an empty car, his train having been a way freight, and he having had orders to pick up and drop cars; that he immediately gave the usual signal to stop; that the engineer failed to receive the signal; that the brakeman noticed the signal, and the deceased was attempting to give the same to the engineer when the injury occurred; that upon the engineer failing to receive the signal from the conductor, the latter went to the rear of the caboose, and applied the air brakes from the rear end of the train, and that thereupon the deceased, pitching forward, fell from the train, and received the injuries which resulted in his death. There is some evidence tending to show that the air brake is only applied from the rear of a freight train in cases of danger, and is used only as an emergency, and then there is evidence tending to show that it is customary to use it in cases like the one at bar, where the conductor wishes to stop, and the engineer fails to receive the usual signal. It is also shown that the air brake may be applied from the rear of the train suddenly with full force, which will stop the train almost immediately, and cause severe jarring of the cars, or it may be applied gradually, so as to stop the train gradually, causing scarcely any jarring of the cars. Whether, in this case, the conductor applied the air brake with full force or gradually, is

not free from doubt under the evidence; some of the testimony tending to show that the brakes were applied suddenly, and some—especially that showing the distance which the train moved after the application—that they were applied gradually. 'The jury returned a verdict in favor of the plaintiff in the sum of $4,250, and thereafter, a motion for a new trial having been overruled, the court entered judgment in accordance with the verdict. This appeal is from the judgment.

BARTCH, J., after stating the case as above, delivered the opinion of the court.

The appellant contends, *inter alia,* that the court erred in charging the jury as follows: "An employee of a railroad company assumes the ordinary risks incident to his employment (but his employer has no right by any act of his to so increase those risks, without warning the employee, as to make the employment more dangerous than the employee would naturally expect; and if the employer does so act as to increase the hazard assumed by him, and by reason thereof, through no fault of his own, the employee is injured, the employer is liable)." We are of the opinion that this portion of the charge is objectionable. A perusal of it seems to create the impression that the court assumed that the employer increased the ordinary risks incident to the employment without warning the employee thereof. At least the language and construction of the sentence are such as were likely to cause the jury to consider increase of risks as a fact regardless of whether it was shown to be such by the evidence. The instruction omits entirely every element of knowledge on the part of the employee of any practice of the defendant to act in such a way, and fails to state that if the employee knew that such was the practice he assumed the risk as an incident to the business. It makes the employer liable for the increase of the ordinary risks incident to the employment because of the per-

formance of a particular act, although it may have been the custom and practice of the employer to perform such acts in the conduct of the business, and such custom and practice may have been known to the employee. The court was also unfortunate in the use of the word "naturally" instead of "reasonably." The question is not whether the risks of the employment were more dangerous than the employee would naturally expect, but whether they were more dangerous than he would reasonably expect. We can not say that such a statement of the law, under the evidence in this case, did not mislead the jury and was not prejudicial to the appellant.

It is also insisted, and, we think, correctly so, that the court erred in that part of its charge included in paragraph 16, which reads: "The risks assumed by an employee are such as are necessarily incident to his employment, and do not include the unnecessary use by the employer of extraordinary instrumentalities for accomplishing his purposes, which, by their use, increase the risks and dangers ordinarily attendant upon the duties of such employee, unless it was the practice of such employer to use such extraordinary instrumentalities, and that such practice was known, or ought to have been known, by the employee." Here the word "unnecessary" is employed in such a way that it may have led the jury to conclude that the application of the air for the purpose of stopping the train at Uintah was wrongful and unjustifiable, whether such conclusion was warranted by the proof or not. The reasonable inference would be that such application of the air must not be made except in case af absolute necessity therefor. Such a rule would render practically useless the modern equipments of railway trains, and doubtless would greatly interfere with the transaction of railroad business. We do not conceive such to be the law. A conductor of a railway train may stop his train by a proper application of air whenever a reasonable necessity for using such means exists.

The appellant further complains of the part of the charge contained in paragraph 19, which reads: "If you find from the evidence that the accident which caused the death of Henry F. Ohlenkamp was proximately occasioned by the neg-- ligent act of the conductor of the train (or by an act which was unnecessary, and which made the duties of the deceased more dangerous than they would ordinarily have been), and that he had no warning of such negligent or unnecessary act, then the defendant company is liable, although you may fur- ther find that other causes may also have contributed to bring about the disastrous result." This instruction was so clearly erroneous and misleading to the jury that com- ment respecting it would seem to be unnecessary. Here the jury was informed that, if the death of the deceased was proximately occasioned "by an act which was unnecessary," etc., without previous warning having been given to the em- ployee, then the railroad company would be liable, and this even though other causes may have "contributed to bring about the disastrous result." It will be noticed that in this connec- tion nothing was said as to whose unnecessary act would render the company liable. This was left to inference, and the rule thus declared would render the company liable in damages, as appears from the last clause of the instruction, notwithstand- ing that the death might have been shown to have been occa- sioned by contributory negligence on the part of the deceased. No such instruction can be upheld.

Other portions of the charge are susceptible of criticism, but we do not deem further reference or discussion in relation thereto necessary, except to say that a charge of a court to a jury should be as concise as possible, since too great prolixity in many instances serves rather to confuse than to aid the jury. We are also of the opinion that the court erred in admitting, over the objections of the defendant, the evi- dence relating to the coupling where the train separated, and to the cars being "thrown up—tipped up—off the track."

There was no issue presented by the pleadings that the coupling appliances were defective, or that the cars were tipped up or thrown from the track. Such evidence constituted a variance from the allegations of the complaint, and was inconsistent with the testimony of the plaintiff's own witnesses, which showed that the coupling was not defective, and that the cars remained on the track. "The law is well settled that a plaintiff can not declare on one theory and recover on another. It is a well-established rule of evidence that the testimony offered must correspond with the allegations of the complaint, and not show an entirely different state of facts." Peay v. Salt Lake City, 11 Utah 331, 338, 40 Pac. 206, 207; Dan Hartog v. Tibbitts, 1 Utah 328.

There are still other questions presented, but, as a new trial must be granted, further discussion is not considered necessary.

The case must be reversed, with costs, and remanded to the court below, with directions to grant a new trial. It is so ordered.

MINER, C. J., and BASKIN, J., concur.